# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH CAROLINA

# CHARLESTON DIVISION

| **LOUISE BROWN, THOMAS DIXON & WILLIAM J. HAMILTON, III**<br><br>                                        Plaintiffs, | **CASE #** 2:25-cv-02649-DCN-MHC |
|---|---|
| **vs.** | **COMPLAINT AND MOTIONS** |
| **CITY OF CHARLESTON,** an incorporated municipality and political subdivision of the State of South Carolina & **WILLIAM S. COGSWELL, JR.,** Mayor of the City of Charleston, in his official capacity,<br><br>                                        Defendants. | **JURY TRIAL NOT DEMANDED** |

1. This is an action seeking injunctive relief, declaratory judgement and attorney's fees regarding free speech and demonstration activities in the City of Charleston including a motion for judicial authorization of a demonstration planned for April 5, 2025 which will require an expedited hearing.

**PARTIES AND JURISDICTION**

2. The Plaintiff, Louise Brown, is a Citizen and resident of Charleston County, South Carolina and the United States. Louise Brown has been a social justice activist since she began working with her mother during the cigar factory strike of 1945-46. She later was one of twelve nurses to lead Charleston's most consequential Civil Rights era social justice actions, the MUSC Hospital Strike of 1969. She was arrested (peacefully as planned) during the Moral Monday

demonstrations at the SC Statehouse in 2014 fighting to expand medicaid. At the age of 81, she led the 5 mile March to the Sea over the IOP connector in 90 degree heat to restore public transit bus service to the beach at the Isle of Palms in July 2015.

3. Brown is known and recognized as the local activist community's "Mother of the Movement" and is an inspirational source of courage and determination to all involved.

4. The plaintiff Thomas Dixon is an activist of over 20 years experience who has held dozens of demonstrations and protests in the Charleston area and participated in hundreds more. He was the featured speaker at the rally in Hampton park during which he was denied use of an effective PA system and forced to attempt to address over 400 people with an underpowered bullhorn in March 2025.

5. Dixon participated in the effort to contain an outbreak of violence in Charleston in June 2020 in which he and other leaders assured young and less experienced protesters that they could make the political system respond to their priorities through the safe and lawful use of First Amendment rights.

6. Dixon has been a candidate for the Mayor of North Charleston and the US Senate. A member and leader of several significant political and social justice organizations, Dixon appears in this action in his individual capacity as a citizen and not as an agent or representative of any of those organizations. Dixon is a citizen and resident of the County of Charleston, State of South Carolina and the United States. The Plaintiff, William J. Hamilton, III, is a Citizen and Resident of Charleston County, the State of South Carolina and the United States. He resides in Mt. Pleasant, SC and had engaged in free speech activities in the City of Charleston for over 40 years including serving at the organizer of the Gage Hall Debates (1986 to 1991); the Hyde Park Debates in Hampton Park (1987 to 1990); resistance to Unity City (2024) and over 50 free speech actions in the City of Charleston. He also organized the Memminger Millennium Manufactory children's activity center for the 1999/2000 Millennium First Night Celebration in the City of Charleston.

7. As an attorney activist responsible for over 100 organized social justice actions, no participant in any protest, demonstration or assembly he has ever organized has been arrested or injured.

8. Hamilton leads Petigru Free Speech Defense, a project of Lowcountry Up is Good, PAC, Inc. a progressive political action committee founded in 2016.

9. The Defendant, City of Charleston is an incorporated municipality and a political subdivision of

the State of South Carolina.

10. William S. Cogswell Jr. is the Mayor of the City of Charleston and is sued here in his official capacity as Mayor.

11. This court has jurisdiction over this matter because all three candidates reside within the district and the State of South Carolina and because the issues herein and the rights sought to be protected are recognized by the First and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

**FIRST CAUSE OF ACTION**

**VIOLATION OF CIVIL RIGHTS AND MOTION FOR MANDATORY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

12. Each and every statement made in the preceding paragraphs is restated here and incorporated by reference.

13. In 2020 in response to protests associated with the George Floyd shooting The City of Charleston adopted a new, and far more restrictive ordinance regulating free speech in the City. This ordinance was adopted during the Pandemic and did not have the benefit of full public discussion and hearings.

14. Since the election of Mayor Cogswell in 2023, the City of Charleston Police Department has become increasingly restrictive in issuing permits for free speech activity under the new ordinance. Customary locations in the city long associated with freedom of assembly such as the Custom House Steps and Marion Square are no longer regularly approved for use.

15. The use of PA systems has been denied, forcing groups to use inadequate bull horns to address groups of hundreds of people.

16. On Feb 28, 2025 at 1:30 PM Plaintiff Hamilton informed officer Timothy Dasher of the City of Charleston Police Department, who he had worked with on permitting free speech actions in Charleston in the past, that he was planning a demonstration on Daniel Island for April 5, 2025. A copy of that email and linked announcement are attached as exhibit "A" Hereto.

17. The email of Feb. 28 and attached document contained most of the significant details about the location and time of the demonstration.

18. There was no response from the City of Charleston.

19. The date selected for the demonstration is the most significant tourism weekend of the year, chosen because Rep. Mace's lack of attention to her district and relevant federal legislative

issues such as transit and affordable housing threatens the variability of the region's critical tourism and medical industries. The Congresswoman's refusal to pay adequate attention to these quality issues is contributing to a declining quality of life for working people in the SC Lowcountry in these industries.

20. The Congresswoman has refused to attend Town Halls planned and conducted so she would hear from her constituents including one scheduled for March 28, 2025 at Mt. Pleasant, Town Hall.

21. The date was also chosen because it falls during the annual professional tennis tournament on Daniel Island and Mace has pursued inconsistent policies towards the rights of women in sports and society as well including a superficial and divisive approach the gender fluidity in women's sports and rejection of Diversity, Equity and Inclusion programs for women and the disabled.

22. After gathering community support for the demonstration, Hamilton filed an application on Behalf of Lowcountry Up is Good, Inc. for a permit for the Demonstration, now called "Ace Mace, Chip and Charge" on March 18, 2025.

23. A copy of that application is attached as exhibit "B" hereto.

24. Receipt of the application was not acknowledged by the City of Charleston.

25. On March 24, 2025 Hamilton informed agents of the City that Unless he received a response to his permit application by the end of business, March 26 that he would file an action in Federal Court to compel issuance of a permit as requested.

26. On March 25, Hamilton received a response from the City offering to issue a permit for April 12 at a different location. A copy of that response is attached as Exhibit "C" hereto.

27. The city's permit offer significantly reduces the utility and value of the planned demonstration and conflicts with another demonstration planned for April 12 along Folly Road on James Island.

28. A demonstration on April 12 will not reach a national audience and will take place on a date when Rep. Mace will likely not be out in public in Daniel Island. The number of people who will be exposed to the demonstration will probably be less than 10% of those who would see a demonstration on April 5.

29. The location proposed for the April 12 alternative date is on a significantly less visible road and is believed to be private property not owned by the City. It also exposes the demonstrators to approach from all directions, whereas the space South of the building in which the Congresswoman's office is located shields the Northern side of the April 5 location, limited

directions of approach and has a clear field of view for police surveillance along the roadway.

30. The City's determination that use of a small 10 x 10 foot pop up tent is onerous because most of the local activists are older and many are senior citizens. The leader of the April 5 protest, Louise Brown, a plaintiff herein is 89 years old. Many of the people planning to attend are over sixty years old.

31. The popup tent will be used to provide sun shelter for the unshaded, open area along the road chosen for the demonstration. Seating will be provided for those needing care and hydration. It will also be used as a social media studio and operations center where liaison with the police can be effectively conducted using the organization's radios, or if necessary face to face meetings. Except for a sun shade on the West side, this tent will be fully open to police observation and the police are welcome to visit and avail themselves of the drinks and snacks provided if they wish.

32. The tent will also function as a puppet theater on one side where demonstrators wearing Trump, Putin and Musk costumes will manipulate a Nancy Mace marionette. The actors manipulating the puppet will be masked, but their identities will be known to the police supervising the demonstration and they won't leave the location of the protest with their masks on.

33. Unfortunately, younger residents of the Lowcountry have, with notable exceptions, either left the area or chosen not to participate in social justice actions like this one so the obligation to maintain a witness for decency, peace and equality falls increasingly on older citizens.

34. It is believed that restrictions like those the Charleston Police Department are attempting to impose are calculated to make demonstrations appear ineffective and unattractive to the public. This is particularly impactful on younger citizens who do not have the benefit of having experienced demonstrations which have contributed to positive social change as those associated with the Civil rights movement of the 1950s and 60s or the Peace demonstrations of the 1960s and early 70s.

35. The Plaintiffs have requested use of a small Fender 150 PA system as part of the demonstration. A copy of the owners manual for this system (Page 1-10) 8is attached as Exhibit D.

36. The Fender 150 is a smaller PA system which produces much higher quality sound than the bull horns the Police Department has been willing to approve. It can be used to transmit speeches by the demonstration leaders and music. It is not believed that even at maximum volume that the one speaker pointed East will produce sound audible more than 150 feet away. The fender 150 is also capable of being patched into a small sound board, which will support the connection of

wireless microphones, electrical instruments and outputs to transmit a live stream of the event.

37. The right to assemble and demonstrate peacefully is essential to maintaining good public order and safety in the City of Charleston, a community deeply divided by historic and now newly aggravated separations by race, class and sex.

38. Granting permits for such peaceful demonstrations legitimizes progressive social leadership which focuses on working towards peaceful solutions to social problems. It helps create a positive organizing focus for the community separate from, but complementary to the entrenched aristocracy which has historically controlled the city and the rising class of multimillionaires replacing them.

39. Such demonstrations provide an opportunity to recruit, engage and train a new, younger generation of leaders to assure that the loyalty and imagination of younger Charlestons does not devolve to socially destructive purveyors of civic vandalism and crime.

40. This demonstration militates against the rising perception that the residents of the city and region are increasingly subservient to the interests of tourism and real estate development and helps the city correct the inevitable tendency to perceive itself through the desires of visitors instead of the eyes of its own people.
Peaceful demonstrations of the kind requested invigorate the local, indigenous progressive civic leadership which has always been a part of (if officially unacknowledged) City character, distinguishing Charleston from more rigidly racist and authoritarian Southern cities such as Mobile, Jackson, Montgomery, Macon and Greenville/Spartanburg.

41. The perception that the Constitutional rights of citizens of the Lowcountry to peaceably assemble, demonstrate, speak, perform and petition their government for a redress of grievances is secondary to the priorities of visitors is corrosive to the City's sense of community and social coherence. Unless citizens believe their community belongs to them, they are not inclined to defend or preserve it.

42. Charleston which has survived pestilence, warfare, earthquake, hurricane, fire and economic privation can not survive in its historic character unless the constitutional rights of her citizens are preserved. Without such, the city devolves to "Confederate Disneyland" , a hollow shell of the community it once was.

**MOTION FOR TEMPORARY RESTRAINING ORDER AND**

**MANDATORY INJUNCTION**

43. Each and every statement made in the preceding paragraphs is restated here and incorporated by reference.
44. The requested permit is a reasonable use of the rights of the Citizens of the City and region as found under the First and Fourteenth Amendments to the Constitution of the United States.
45. The City's attempt to restrict and frustrate the use of such rights through the arbitrary and capricious application of an overbroad and unnecessarily restrictive ordinance is unconstitutional.
46. The Plaintiffs would ask that this court issue a temporary restraining order and mandatory injunction requiring the City of Charleston to issue a permit for the demonstration as requested by the plaintiffs and to provide reasonable levels of police protection for such demonstration and to maintain good civic order in the immediate vicinity.
47. The Plaintiffs would further ask for a permanent injunction prohibiting the City of Charleston from denying them and others the right to peaceably assemble on public property in reasonable numbers, to chose, within reasonable limits, areas which are visible to the public and effective for communication at times when the public may be present, to use public address systems in accordance with the applicable noise ordinance, to use tents to shelter equipment and people during demonstrations.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGEMENT

48. Each and every statement made in the preceding paragraphs is restated here and incorporated by reference.
49. The City Ordinance is vague, overbroad and grants an intolerable level of unfettered discretion to the police department in the issuance of permits.
50. The Court should declare the entire new ordinance as being unconstitutional, null and void and authorize temporary arrangements for permitting until such time as a new ordinance can be adopted by the city.

## THIRD CAUSE OF ACTION
## ATTORNEY'S FEES & COSTS

51. Each and every statement made in the preceding paragraphs is restated here and

incorporated by reference.

52. William J. Hamilton, III is an attorney of 39 years experience and continues in good standing as a member of the SC Bar. He was admitted to practice on November 25, 1985 and has been in active practice since that time.

53. Hamilton has appeared in hundreds of Civil and Criminal cases, including Burke v. Charleston (1994) in this court, litigating free speech issues in the city.

54. Hamilton is a recognized author and teacher in the areas of civic activism, public transit, and Lowcountry history. He has written and published over a million words and over 1000 published articles about these and other topics in the SC Lowcountry. He has presented at conferences at national gatherings at the National Labor College in Maryland and Transit Center Training Conference in Seattle Washington.

55. Hamilton was President of the 175 year old Clariosophic (Debating and) Literary Society and founder of the Athenian Literary and Debating Society at the University of South Carolina.

56. Hamilton is a recipient of the 1994 Civitas Award from the I'On Community and the one of the 2019 Spotlight Awards for civil leadership presented by the City of Charleston.

57. Preparation of presentation of this action has required Hamilton's time and effort to protect the constitutional rights of those planning to participate in the demonstration referenced in this action and many other peaceful demonstrations planned in the city which it is the right of the citizens to conduct and which rights the City has begun to practice the regular and cynical effort to undermine such rights and render the voice and presence of its own citizens ineffective in a time of great and warranted concern and unrest associated with a movement to abandon the traditional norms of democratic government and civil mercy which have long preserved the freedom and decency of the City of Charleston.

58. Hamilton would ask that this court award him the costs and disbursements of this action and a reasonable fee for his services as an attorney herein and that the amount of his fee be multiplied by a reasonable factor to reflect the value of this action to the community.

**Wherefore the Plaintiffs would demand that this court order, adjudge and decree that:**

59. Hold an emergency expedited hearing and issue an immediate Temporary restraining order and mandatory injunction issue requiring the City of Charleston to issue a permit allowing the Ace Made April 5 demonstration on Daniel Island as applied for by the Plaintiffs and to see that a responsible amount of police protection is provided for the same.

60. Declaring the City Ordinance regulating free speech activities to be Unconstitutional, Null and Void.
61. Granting Plaintiff and Attorney Hamilton his costs and reasonable attorney's fees herein with fees to be multiplied by a factor reflecting the difficulty and importance of this action.
62. Granting such other and further relief as this court, in this case may consider just and proper.

Respectfully submitted.

William J. Hamilton, III
SC Bar #2632
32 Sowell St.
Mount Pleasant, SC 29464
Ph (843) 870-5299
Email wjhamilton29464@gmail.com

Exhibits

A. copy of that email and linked announcement are attached as exhibit "A" Hereto.

B. copy of that application (including site maps) is attached as exhibit "B" hereto.

C. copy of that City's response and counterproposal.