UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Louise Brown, Thomas Dixon & William J. Hamilton, III. | CASE NO.: 2:25-cv-02649-DCN-MHC |
| Plaintiffs, | |
| vs. | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR MANDATORY INJUNCTION** |
| City of Charleston, an incorporated municipality and political subdivision of the State of South Carolina & William S. Cogswell, Jr., Mayor of the City of Charleston, in his official capacity, | |
| Defendants. | |

Defendant City of Charleston submits this Memorandum in Opposition to Plaintiffs' Louise Brown, Thomas Dixon, and William J. Hamilton, III (collectively, the "Plaintiffs") Motion for Mandatory Injunction.  Mayor William Cogswell was not involved in the decision-making as to the permit, no cause of action is stated against him, he is not a necessary party to effectuate relief, and, therefore, he should be dismissed.

## FACTS

Plaintiff William Hamilton, III on behalf of Lowcountry Up is Good, Inc., filed an application for a demonstration, now called "Ace, Mace, Chip and Charge" pursuant to the City of Charleston's First Amendment demonstration Ordinance. (See Ordinance 2021-105, codified at Sections 25-36 to 25-51.) Hamilton first reached out to Lieutenant at City of Charleston Police Department by email on March 13, 2025.  (Lt. Dasher was once involved First Amendment protest applications, but was no longer in that role at the time.)  The application for this protest was not actually filed with the necessary information required by the City's Ordinance until March 17,

2025. The application specified the demonstration would take place in the public right-of-way next to the building on 900 Island Park Drive, but along River Island Drive, on April 5, 2025, from 1:00 PM to 4:00 PM. The estimated number of attendees was 150 participants per shift with two shifts of 90 minutes each.

Per Section 25-43 of the City's Ordinance, a response was due from the Police Department within one week after the date of application. On March 25, the timely City responded to the permit request by declining the permit request for April 5 at the stated location and instead offering to issue a permit for April 12 in an alternate location in the public right of way including the head in offset parking spaces across from 895 Island Park Drive, Charleston, SC 29492. (Compl. ¶ 26). This location is approximately 100 yards away from the original location and is adjacent to the other side of the building that Nancy Mace's office occupies. (See Affidavit of Captain Matt Stanley and attached picture)

The Plaintiffs brought this action seeking injunctive relief, declaratory judgment, and attorney fees, including a motion for judicial authorization of the planned demonstration.

On Wednesday, April 2, 2025, Plaintiffs sent the City notice of this hearing date and time and then stated that "You are further given notice that at the Hearing . . . Plaintiffs will ask the court to direct the city to permit a demonstration at Washington Park on Tuesday, April 8 from 4 to 4:50 p.m. for up to 200 people . . ." No motion has been filed to the best of the City's knowledge after review of PACER filings. Plaintiffs have not filed a permit for this protest as of the date of this memorandum.

## LEGAL STANDARD

The standard for granting a preliminary injunction requires the plaintiff to demonstrate four factors: (1) a likelihood of success on the merits, (2) a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the plaintiff's favor, and (4) that the injunction is in the public interest. This standard is derived from the Supreme Court's

decision in <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 20 (2008), and has been

consistently applied by the Fourth Circuit. <u>See</u> <u>e.g.</u>, <u>Fleet Feet, Inc. v. Nike, Inc.</u>, (4th Cir. 2021);

<u>Pashby v. Delia</u>, 709 F.3d 307 (4th Cir. 2013)

     The Fourth Circuit has emphasized that all four factors must be satisfied as articulated, and

courts must separately consider each factor. This approach was adopted following the Supreme

Court's decision in Winter, which recalibrated the prior "balance-of-hardship test" previously used

in the Fourth Circuit.

     Preliminary injunctions are extraordinary remedies and should not be granted as a matter

of course. Courts exercise equitable discretion in determining whether to grant such relief, even

when the plaintiff has made the requisite showing under the four-factor test.    "A preliminary

injunction is an extraordinary remedy never awarded as of right." <u>Winter</u>, 555 U.S. at 24.

<u>**ARGUMENT**</u>

**I.    THE PLAINTIFFS ARE NOT ENTITLED TO A MANDATORY INJUNCTION REQURING THE CITY TO ALLOW THEM TO PROTEST ON APRIL 5, 2025, AT THE LOCATION THEY REQUESTED.**

     This Court should not grant a Mandatory Injunction forcing the City to allow the Plaintiffs

to protest on the afternoon of April 5, 2025, on River Island Drive.  The City has enacted a facially

valid ordinance regulating First Amendment demonstrations of 25 or more persons, the City has

enforced its ordinances in a content-neutral manner, the Plaintiffs' proposed location is unsafe, and

the proposed date is problematic as their protest would require approximately 12-15 officers on a

date when that number of officers is not available due to other special events that were scheduled

well before the this protest application was filed.   The City has provided an adequate alternative

location and an alternative date.

     In July of 2021, the City of Charleston enacted Ordinance No. 2021-105 to create

Sections 25-36 through 25-55 of the City of Charleston Code of Ordinances providing a permit

application framework for First Amendment protests involving 25 or more people. Protests of less than 25 people are not regulated as is consistent with case law requiring an exception for small groups. See Cox v. City of Charleston, 416 F.3d 281 (4th Cir. 2005).

For protests of 25 people or more, the City requires an application which includes information about the organizer of the proposed event, the approximate number of persons, the time frame of the proposed event, the location of the event and other information. The application is to be evaluated by the police department using content-neutral standards that are set forth in Section 25-44 of the Ordinance. The Ordinance further allows the Police Chief to impose conditions and to propose reasonable changes to the date and location of the protest based on stated considerations. The Ordinance also provides for an appeal of any decision to the Public Safety Committee of City Council with time frames for those appeals to be heard.

The standards for issuance of a permit provide:

## Sec. 25-44. Standards for issuance.

The chief of police shall issue a permit as provided for hereunder when, from a consideration of the application and from such other information as may otherwise be obtained, he finds that:

(1) The conduct of the demonstration will not substantially interrupt the safe and orderly movement of other traffic, pedestrian and vehicular, contiguous to its route.

(2) The conduct of the demonstration will not require the diversion of so great a number of police officers of the city properly to police the line of movement and the areas contiguous thereto as to prevent normal police protection to the city.

(3) The concentration of persons at assembly points of the demonstration will not unduly interfere with proper fire and police protection of areas contiguous to such assembly areas.

(4) The conduct of such demonstration will not interfere with the movement of firefighting equipment enroute to a fire.

(5) The conduct of the demonstration is not reasonably likely to cause injury to persons or property, or to provoke disorderly conduct.

(6) The demonstration is scheduled to move from its point of origin to its point of termination expeditiously, without unreasonable delays enroute and without passing by any location more than once.

(7) If the demonstration is to be solely on the sidewalk areas of the city, the demonstration shall be in single file only of persons participating, with no animals, vehicles or other nonhuman objects except reasonably sized signs individually carried in the line of procession.

(Ord. No. 2021-105, § 1, 7-29-21)

Section 25-55 of the ordinance provides:

### Sec. 25-53. Authority of chief of police.

(a)   The chief of police shall have the authority to restrict First Amendment demonstrations from certain areas if conditions present a potential harm or threat to the public's safety, the free passage of pedestrian or vehicular traffic, or the unimpeded ingress and egress to and from city buildings, monuments or memorials, to include fountains, sculptures, plaques, statues, markers, gazebos, objects and other architectural elements or structures, and any such restricted areas shall be subject to modification by the chief of police at any time.

(b)   The chief of police shall have the authority to make reasonable adjustments in the date, time, frequency, duration, route, location, or manner of a First Amendment demonstration at any time in order to accommodate other concurrent demonstrations, special events or city events, the rights of adjacent property owners, the needs of the public to use city streets or parks, and pedestrian and/or vehicular traffic using public rights-of-way and sidewalks, to prevent interference with the intended use of city parks or facilities by other groups or individuals, or with the tranquility of the neighborhood surrounding the area, or when the chief of police finds it is in the best interest of the public health, safety and welfare of the city and its citizens. The chief of police in his discretion may deny, reschedule, or provide alternate conditions for a permit to achieve this end.

(Ord. No. 2021-105, § 1, 7-29-21)

Clearly the City of Charleston has the legal authority to enact and enforce such an ordinance for larger groups. Thomas v. Chicago Park Dist., 534 U.S. 316, 122 S. Ct. 775 (2002); Cox v. City of Charleston, 416 F.3d 281 (4th Cir. 2005).

Although the plaintiffs in their complaint make a passing statement that the Ordinance is affords too much discretion, they have not articulated any way in which the City of Charleston's ordinance content-neutral considerations afford too much discretion. The City's Ordinance is more specific than the ordinances upheld in other cases including the governing Supreme Court precedent of Thomas.

The Plaintiffs do not seem to suggest that the application was denied because of the content of their message. They do not provide any proof or even suggest the City is allowing other large protests that same date to their determent because of the content of the message. The Bridge Run is set years in advance. The current schedule has Bridge Run dates set through 2032. See

https://bridgerun.com/future-race-dates/)   The Tennis Tournament is typically set more than a year in advance.

The City's justification is strong for denying a permit on the specific date and location requested in favor of proposing an alternative date one week later and approximately 100 yards from the proposed.  The City's denial of the request to protest on April 5, 2025, at this specific location is based on 1) the unsafe location of the protest which is concerning regardless of the date, and 2) the exhaustion of police resources on perhaps the busiest day of the year for the City of Charleston Police Department—the Saturday of the Cooper River Bridge Run and the Credit One Tennis Tournament.

Per the attached affidavit of Captain Matthew Stanley of the City of Charleston Police Department, the proposed location of the protest is poor.   It is not safe and cannot reasonably be protected.   There is no curbing to hinder cars from intentionally or unintentionally going off the roadway into the protesters.   There are no trees or other obstacles to vehicles going off the roadway as there are at the proposed alternative location. The protesters would be trapped between the building and the wayward motorist without any easy means of escape.   Second, as the affidavit sets forth, the police do not have the resources available on April 5, 2025, to provide the protection and scene management for the Plaintiffs' proposed protest.   Captain Stanley states in his affidavit a protest of the size requested by plaintiffs would reasonably demand the service of 12-15 officers and two patrol vehicles.   Further, he explains that he would probably attempt to provide additional protection for the protesters by way of stationing police vehicles and barricades on the roadway. However, this will be 1) not adequate to actually protect the protesters at their proposed location, and 2) will cause lane closures which will result in traffic problems that will be unacceptable given the traffic of the nearby Tennis Tournament. Traffic considerations are a valid consideration when evaluating protest and parade permits.  See Quaker Action Grp. v. Morton, 516 F.2d 717, 733(D.C.

Cir. 1975) (upholding a prohibition on public gatherings during morning and evening rush hours on weekdays)

     The Cooper River Bridge Run involves a lot of people.  The number of runners alone at 34,000 is approximately three times the capacity of either the Citadel's Johnson Hagood Stadium or the Credit One Stadium which both have seat capacity of approximately 11,000 people.  The Cooper River Bridge run requires enormous police resources to close streets, to redirect traffic, to be ready to address potential threats, and to otherwise try to keep the runners and spectators safe. The City of Charleston would not even be able to do all the police work for the Bridge Run itself. It is already relying on cooperation with other jurisdictions including Mount Pleasant, the State of South Carolina, and Federal law enforcement.   Police work for the Bridge Run starts very early with many of the officers starting in the wee hours of the morning of April 5, 2025, around 3 a.m. Then the City must provide police support for the Credit One Tennis Tournament.  All of this must be done while providing regular police service to the citizens of Charleston.

     The inability to be able to provide adequate resources on a particular date and time is a common criterion found in ordinances of this type that have been upheld by the courts.   See Sullivan v. City of Augusta, 511 F.3d 16, 54-55 (1st Cir. 2007) (upholding portion of ordinance that had criteria which among other standards required adequate fire and police services); Brandt v. Vill. of Winnetka, No. 06-cv-588, 2007 WL 844676, at *21 (N.D. Ill. Mar. 15, 2007) (upholding a provision that authorized denial "if there are not significant Village resources available at the time of the proposed event to mitigate the disruption"); Progressive Labor Party, 487 F. Supp. at 1059 (upholding a provision that authorized denial if "the necessary diversion of police protection 'would deny reasonable police protection to the City' ").

     If the ordinance is facially valid and is being applied in a content neutral manner, the only remaining question would be whether the City's denial is pretextual. In the present case, the Plaintiffs have not alleged that the City of Charleston's lack of additional resources on this same

date is a lie or pretextual.   This is not a protest against the City or its officials.   The City of Charleston has no position here that it is attempting to advance or stifle any position.

Plaintiffs must demonstrate they will suffer irreparable harm absent an injunction. However, no such harm exists here because Plaintiffs were offered a reasonable alternative location and date for their demonstration. The City of Charleston responded to Plaintiffs' permit application in a timely manner and provided an alternative demonstration site at public parking spaces across from 895 Island Park Drive on April 12, 2025. (Compl. ¶ 26).

The Plaintiffs assert a blanket right to be able to protest at this location, date and time because they claim the alternative will not be seen by as many people and the alternate location 100 yards away the following weekend will not be as impactful.  However, the Constitution does not guarantee every speaker his or her forum of choice. See, e.g., Heffron v. Int'l Soc. for Krishna Consciousness, 452 U.S. 640, 647 (1981) ("the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired."). As noted by the 1st Circuit Court of Appeals in a case partially upholding a similar ordinance "An alternative need not have precisely the same impact to be "ample," see Taxpayers for Vincent, 466 U.S. at 812; Globe Newspaper, 100 F.3d at 193." Sullivan v. City of Augusta, 511 F.3d 16 (1st Cir. 2007). Similarly, the Court in Cox v. Louisiana, reasoned that "the rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time." 379 U.S. 536, 554 (1965).

In this case there is also a concerning issue of whether plaintiffs are the proper parties to allege the denial of a permit for this specific date and location.   The applicant for the protest is "Up is Good, PAC, Inc."   But that entity is not a party to this action.

Similarly, the City's Ordinance provides the applicant has the right to appeal the decision to City' Council's Public Safety Committee. Section 25-45. The applicant has not done so, instead electing to proceed directly to this Court.

Finally, an action for injunction is an equitable remedy. Plaintiffs argue that they want to the "national audience" of the Credit One Tennis Tournament on Daniel Island strategically juxtaposed against the location of Nancy Mace's office on Daniel Island. The Credit One Tennis Tournament is on the same weekend each year. The tour schedule is confirmed by the Women's Tennis Association about a year in advance. Nancy Mace's office has been on Daniel Island for more than a year. To be clear, the City is not arguing that the Applicant was required to apply 60 or 90 days prior to its protest. The Ordinance provides protest applications to be filed three days in advance. The City did not penalize the applicant for filing March 17, 2025. However, while in this Court asking for an equitable remedy, it is fair for the Court to consider whether this is an "emergency" of the permit applicant's own making. And the fairness or equity to the City and its Police Department who are right now busy trying to plan and executing plans for the busiest day of the year---a day that will start in the wee hours less than 24 hours before this hearing is scheduled to be heard.

## II. THE PROTEST BEING PLANNED FOR APRIL 8 IS NOT PROPERLY BEFORE THIS COURT AND THERE IS NO ACTUAL CONTROVERSY TO DECIDE AT THIS POINT.

With their notice to the City of Charleston of the time and date of this hearing, plaintiffs' counsel stated: "You are further given notice that at the Hearing . . . Plaintiffs will ask the court to direct the city to permit a demonstration at Washington Park on Tuesday, April 8 from 4 to 4:50 p.m. for up to 200 people . . ." No motion has been filed to the best of the City's knowledge after review of the most recent PACER filings. Therefore, no hearing has been set by the Court as to any non-existent motion. Perhaps more importantly, no one has filed a permit for this protest.

Therefore, the City has not granted or denied a permit for April 8, 2025, for Washington Park. There is no actual "case or controversy" for this Court to decide as to any April 8, 2025, protest.

## **CONCLUSION**

For the foregoing reasons, Defendant City of Charleston respectfully requests this Court deny Plaintiffs' Motion for a Mandatory Injunction and not consider its request for the Court's assistance with the April 8th protest.

CLAWSON and STAUBES, LLC


_____*s/Timothy A. Domin*_____
Timothy A. Domin
Federal District of SC Bar No.:  5828
126 Seven Farms Drive, Suite 200
Charleston, South Carolina 29492-8144
Phone:   (843) 577-2026
Fax:      (843) 722-2867
Email:    tdomin@cslaw.com


Charleston, South Carolina
April 3, 2025